UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| THE BLACKJEWEL LIQUIDATION TRUST, *by and through* DAVID J. BECKMAN, TRUSTEE, | ) ) ) | |
| | ) | No. 6:26-CV-11-REW-EBA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | OPINION & ORDER |
| | ) | |
| JAVELIN GLOBAL COMMODITIES (US), LP, *et al.*, | ) ) | |
| Defendants. | | |

\*\*\* \*\*\* \*\*\* \*\*\*

Before the Court are Defendants Javelin Global Commodities (US) LP's ("Javelin") and Black Mountain Marketing and Sales LP's ("Black Mountain" or "BMMS") (collectively, "Defendants") motion to exclude the testimony and opinions of Ruby Barickman, *see* DE 49 (Defendants' Motion to Exclude), DE 49-1 (Memorandum of Law in Support of Defendants' Motion to Exclude), and Plaintiff The Blackjewel Liquidation Trust's, by and through Trustee David J. Beckman (the "Trust" or "Blackjewel"), motion to exclude Brian Cantrell's final opinion, *see* DE 48 (Blackjewel's Motion to Exclude), DE 48-1 (Memorandum of Law in Support of Blackjewel's Motion to Exclude). Both motions are fully briefed. *See* DE 55 (Blackjewel's Response in Opposition), DE 57 (Defendants' Reply in Support), DE 54 (Defendants' Response in Opposition), DE 58 (Blackjewel's Reply in Support). The matters are ripe for consideration. Due to the interplay between the expert reports and the overlapping legal issues, the Court addresses both motions by this Order.

## I.    Background[1]

Blackjewel filed suit against Defendants in state court, claiming tortious interference, unjust enrichment, and civil conspiracy. *See* DE 1-1 at 10-12 ¶¶ 52-76. Following removal to this Court, the Court whittled Blackjewel's claims, granting Defendants' motion to dismiss the unjust enrichment claim. *See generally* DE 36 (Order on Motion to Dismiss). The parties then moved to amend the contemporaneous scheduling order, which the Court granted. *See* DE 38 (Joint Motion to Amend); DE 39 (Amended Scheduling Order). That order was amended, at the joint request of the parties, three more times, with the current scheduling order found at DE 46. Under the current scheduling order, and as relevant here, Blackjewel was required to disclose the identity of expert witnesses that may be used at trial, along with signed written reports, by April 9, 2025. *See* DE 46 at 2. Defendants' deadline for same was May 8, 2025. *See id.*

Blackjewel disclosed the report of Ruby Lee Barickman on April 9, 2025. *See* DE 48-4 (Barickman Report); DE 49-2 (same). Barickman, through her LLC, "provides a variety of consulting services, including specializing in transactions, fundraising, and corporate development strategies for mining and renewable energy companies." *See id.* at 2. She was retained by Blackjewel to opine on the value of the Royalty Agreements to which INMET and Blackjewel were parties. *See* DE 48-4 at 2. Barickman was also retained to opine on global coal market conditions and market typicality of certain contract provisions. *See id.*

Defendants provided Blackjewel with the rebuttal (as labeled) expert report of Brian Cantrell on May 8, 2025. *See* DE 48-3 (Cantrell Report). Cantrell served for twenty years as Senior Vice President and Chief Financial Officer of Alliance Resource Partners, L.P., a

---

[1] For a more thorough recitation of the facts underlying the claims in this case, see the Court's order regarding summary judgment, entered this same date.

diversified energy company that was the second-largest coal producer in the eastern United States. *See id.* at 2. Cantrell was retained by Defendants to review Barickman's report and render his own opinions and observations with respect to Barickman's opinions and certain case subject matter. *See id.*

Both parties now move to exclude, either in whole or in part, the other side's expert's opinions. *See* DE 48; DE 49.

## II.  Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

In *Daubert v. Merrel Dowell Pharms., Inc.*, 113 S. Ct. 2786 (1993), the Supreme Court "established a general gatekeeping ... obligation for trial courts," requiring them "to exclude from trial expert testimony that is unreliable and irrelevant." *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (quoting *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001)); *see also United States v. Mallory*, 902 F.3d 584, 592 (6th Cir. 2018) ("District

courts are the 'gatekeep[ers]' of expert testimony." (alteration in original) (quoting *Daubert*, 113 S. Ct. at 2798)).

"According to *Daubert*…, a district court's task in assessing evidence proffered under Rule 702 is to determine whether the evidence 'both rests on a reliable foundation and is relevant to the task at hand.'" *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176 (6th Cir. 2009) (quoting *Daubert*, 113 S. Ct. at 2799). "The inquiry is 'a flexible one,' and '[t]he focus ... must be solely on principles and methodology, not on the conclusions they generate.'" *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (alterations in original) (quoting *Daubert*, 113 S. Ct. at 2797). The proponent of an expert opinion must establish admissibility by a preponderance of the evidence. *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

As to the recent revisions to Rule 702, the Court sees little impact, beyond clarification, for a court properly applying the rule as previously phrased. This Court has long recognized the preponderance standard (from Rule 104(a)) on admissibility of opinion evidence, including for the three reliability-based requirements, and has not viewed reliability findings as a Rule 104(b) matter. The amendments are confirmatory.

This case centers on the commercial relationship of Defendants and INMET, which was indebted to Blackjewel under certain royalty agreements. INMET never paid, and eventually INMET's bankruptcy enervated the royalty obligations and allowed Defendants (through an affiliate) to acquire INMET's assets free of the obligations. Defendants either acted properly or acted tortiously, and the opinions here touch on the debated characterization and resulting alleged harm.

4

### III. Analysis

#### a. Defendants' Motion to Exclude Barickman Report

Defendants move to exclude the proposed testimony and opinions of Ms. Barickman, arguing that her testimony and methodology are unreliable and contain improper legal conclusions. *See id.* Defendants also contend Ms. Barickman is unqualified to render opinions relating to coal mine financing and the structure of coal financing agreements. *See id.* Defendants specifically challenge the enumerated opinions provided at the end of Barickman's report. *See* DE 49-2 at 14-15. Those opinions are as follows:

> 1) The Fixed Royalty Agreement had an estimated value ranging from $7.893-$13.670 million as of September 7, 2020, the date on which the first payment on the Royalty was due to be paid (the "2020 Royalty Value"). In my opinion, this reflects a commercially reasonable and market-aligned valuation of the 2020 Royalty Value based on prevailing conditions in the market at that time.
>
> 2) The Employee Royalty Agreement, which was characterized as having a nominal value of $550,000 for the purpose of analyzing comparable bids, had an estimated value ranging from $301,415-$521,986 as of September 7, 2020 (which was the date on which the first payment on the Employee Royalty was due to be paid) (the "2020 Employee Royalty Value"). In my opinion this reflects a commercially reasonable and market-aligned valuation of the 2020 Employee Royalty Value based on prevailing conditions in the market at that time.
>
> 3) Therefore, it is my opinion that the Trust should have expected to receive the full economic benefit of the 2020 Royalty Value plus the 2020 Employee Royalty Value in 2020 (the "2020 Royalty Value").
>
> 4) The market conditions for coal and secondary market royalty transactions between 2021 and 2023 were highly favorable and supported robust pricing and export volumes, supporting my further opinion that the royalties would have retained their value over the 2021 to 2023 period.
>
> 5) The structure of the Royalty Agreements, including provisions that they "run with the land", would have insulated the Trust and/or the hypothetical buyer of the Royalty Agreements from counterparty credit risk and bankruptcy exposure.
>
> 6) Based on my review of the structure of the financing provided by the Defendants to INMET, it is my opinion that the arrangement was not consistent with market norms and created a capital structure that significantly impaired the INMET's

5

ability to independently manage its operations. The Loan and Marketing Agreements were structured in a way that gave the Defendants significant control over the operations of INMET, including how much liquidity would be available to INMET and which obligations of INMET would, and would not, be paid. Additionally, a fully committed offtake structure covering 100% of production, committing all a company's coal production to a single party, is extremely atypical in the market. Based on my experience, most commercial offtake or marketing agreements cover only a portion of anticipated production, preserving operational and commercial flexibility.

*See id.* Ms. Barickman provided the grounds for her opinions, including valuation methodology, market conditions, risk factors/allocation, and impact of contractual terms. *See id.* at 16-17.

Defendants argue Opinions 1 through 5 are not reliable and should be excluded because each opinion relies on the factual/legal premise that the royalties at issue "run with the land." *See* DE 49-1 at 6. Specifically, because the "runs with the land" provisions of the Royalty Agreements were ruled invalid by the United States Bankruptcy Court for the Eastern District of Kentucky, Defendants argue that the opinions are unreliable as being premised on an incorrect assumption. *See id.* at 7; *see also INMET Mining, LLC v. Blackjewel Liquidation Tr.*, No. 23-7002 (Bankr. E.D. Ky. July 7, 2023), DE 69 therein.[2] Defendants note Barickman's deposition testimony, where she explicitly states that Opinions 1 through 5 hinge, to varying extents, on this assumption and do not reflect or consider the Bankruptcy Court's ruling. *See* DE 51-1 at 63:8-64:1; 93:18-94:12, 102:8-25, 105:2-22, 103:1-20. Blackjewel does not dispute that this assumption is embedded in Opinions 1 through 5. Instead, Blackjewel argues that there is a sufficient factual basis in the record to value the royalties as if the obligations ran with the land, most notably the explicit contract language,

---

[2] Mootness ultimately prevented review of the propriety of the ruling over the course of two appeals. *See Blackjewel Liquidation Trust, LLC v. Liquidating Trust of Inmet Mining, LLC*, No. 7:23-cv-00059-REW (E.D. Ky. Sep. 25, 2024), DE 37 therein; *Blackjewel Liquidation Trust, LLC v. Liquidating Trust of Inmet Mining, LLC, et al.*, No. 7:23-cv-00089-REW (E.D. Ky. Feb. 14, 2025), DE 32 therein. Judge Schaaf only formally decided the matter with respect to the Fixed Royalty, but he did approve sales of the affected property free and clear, which eliminated any obligation impressing the subject property from either royalty agreement.

notwithstanding the bankruptcy ruling. *See* DE 55 at 14-15. Blackjewel additionally contends that accounting for the provision was proper because the valuation date was "as of September 7, 2020," before Defendants' alleged tortious interference landed and before the Bankruptcy Court's ruling. *See id.* at 15.

Though "rejection of expert testimony is the exception, rather than the rule," *see In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008), "an expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known." *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800-01 (6th Cir. 2000) (cleaned up). The district court must determine not whether the expert opinion is correct, but "whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529-30.

There are no grounds, much less "good grounds," for valuing the royalties without cognizance of their ultimate legal status. What may have been debatable (or aspirational) in the documents became fixed in the course of the litigation. It simply conflicts with case reality for Barickman to treat the obligations as bullet proof when the legal machinations yielded a completely different result. An opinion or testimony premised on incognizance of such status goes beyond "unsupported speculation" into deliberate disregard of established fact, a much shakier foundation. Blackjewel's attempt to avoid exclusion by claiming the bankruptcy ruling goes to weight instead of admissibility ignores the effect of a court order. Furthermore, the Court will not entertain Blackjewel's attempt to relitigate the enforceability of the provision. Thus, there is no "reasonable factual basis" for an opinion unreliably predicated on this incorrect foundation, so exclusion is proper. *See United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 342 (6th Cir. 1993); *see also In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 767 F. Supp. 3d 495, 508 (E.D.

Mich. 2025) (explaining that exclusion is proper where the facts upon which his or her opinions are predicated are "indisputably wrong").

Nor is the Court persuaded by Defendants' argument for a retroactive valuation date. Contrary to Blackjewel's assertion that Defendants somehow "devalued" the extant royalty agreements by its conduct, at least as to legal status, the royalties never ran with the land under governing Kentucky law; this was the Bankruptcy Court's conclusion, for several reasons. Whether Defendants tortiously interfered is one thing, *e.g.*, by improperly inducing or causing INMET to breach. However, Judge Schaaf resolved the legal status of the royalty obligations, and the Court will not accept a valuation, however dated, that depends on ignoring that fixed marker in the legal path.

Accordingly, given Ms. Barickman's error in assuming the royalties ran with the land, despite the bankruptcy ruling, the Court must now determine which of the opinions that incorporated this incorrect premise, if any, "rest on a reliable foundation." *See Best*, 563 F.3d at 176. Opinions 1 through 3 value the royalty agreements individually (1&2) and aggregately (3). *See* DE 49-2 at 14-15. These are plainly unreliable, as the royalties running with the land is a material variable or assumption in the valuation. Opinion 4 broadly discusses market conditions for coal and secondary market conditions for royalty transactions. *See id.* at 15. Though offered as support for Opinions 1 through 3, which are now excluded, the import of the opinion, the broader market conditions, does not hinge on the faulty premise. It is therefore not tainted and is, as to the coal market, reliable. Opinion 5 focuses on counterparty credit risk and bankruptcy exposure to Blackjewel (or a subsequent buyer) based on the structure of the Royalty Agreements. *See id.* Ms. Barickman's considerations in rendering this opinion were the run with the land provisions and the interest rate accrual provisions. *See* DE 49-3 at 97:9-99:7. Thus, it too heavily relies on the

incorrect premise.  Defendants also argue that Opinion 5 is an improper opinion because it involves contract analysis, which Ms. Barickman is not qualified to perform.  *See id.* at 9-10.  However, because the Court disposes of Opinion 5 on reliability grounds, the Court elects not to reach the merits on qualification.

Therefore, Opinions 1, 2, 3, and 5 of Ms. Barickman's report are unreliable and must be excluded under Rule 702.  Opinion 4 is not excluded.

Next, Defendants argue Ms. Barickman is not qualified to render Opinion 6, relating to INMET's and Defendants' contractual arrangement relative to market norms and that such opinion is not relevant to the tortious interference claim.  *See* DE 49-1 at 10-11.  Blackjewel disagrees, pointing to Ms. Barickman's experience at Orion Resource Partners as supplying the requisite qualification.  *See* DE 55 at 12-13.  They further assert the opinion's obvious relevance based on the allegation that Defendants improperly interfered with INMET and Blackjewel's contracts by way of mechanics built into Defendants and INMET's multiple agreements.  *See* DE 55 at 12-13. The Court agrees with Blackjewel with regard to the relevance piece—arrangement peculiarity or term typicality would be relevant to the tortious interference claim, given the theories on improper leverage and exploitation under the various documents.

As for qualification, an expert must be qualified by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  "Whether a proposed expert's experience is sufficient to qualify the expert to offer an opinion on a particular subject depends on the nature and extent of that experience."  *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209 (6th Cir. 2015) (citing *United States v. Cunningham*, 679 F.3d 355, 379 (6th Cir. 2012)).  "Experts need not even have direct experience with the precise subject matter or product at issue."  *Ashland Hosp. Corp. v. Affiliated FM Ins.*

*Co.*, No. 11-16-DLB-EBA, 2013 WL 3213051, at *2 (E.D. Ky. June 24, 2013) (citing *Planned Parenthood Cincinnati Region v. Taft*, 444 F.3d 502 (6th Cir.2006)).

Ms. Barickman's curriculum vitae, *see* DE 49-4, provides ample support to find that she is sufficiently qualified based on her experience. Ms. Barickman relevantly worked at Orion Resource Partners, a "[g]lobal industry leader in delivering customized financial solutions to mining companies," from July 2018 to April 2023. *See id.* In her first three years there, she served as an investment associate, in which role she "structured complex financing packages, optimizing risk-based return profiles across royalties, streams, equity, and debt." *See id.* She testified that during her time at Orion, she also reviewed "many offtake agreements." *See* DE 55-16 at 109:5-13. Consistent with the Sixth Circuit's liberal view on the experience sufficient to satisfy Rule 702's qualification requirement, *see Bradley*, 800 F.3d at 208–09, the Court finds Ms. Barickman qualified to render Opinion 6. To the extent Barickman lacked experience in *coal* mine financing arrangements specifically, that lack of experience affects weight, not admissibility, and Defendants may freely cross-examine Ms. Barickman on this purported weakness. *See Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 516 (6th Cir. 1998). She is well-credentialed on the coal market and norms within the industry, and her views on how the arrangements here compare to such norms will assist the trier in this case.

Accordingly, the Court excludes Opinions 1, 2, 3, and 5 of Ms. Barickman's report as unreliable. Ms. Barickman may testify on Opinions 4 and 6, as stated.

And just to say, this ruling does not eliminate any damage claim on the merits. Blackjewel had payment rights under the contracts, and whether Defendants interfered with and hampered those rights, tortiously causing loss, is the key question in the case. Barickman's particular

10

calculations are out, but that does not eliminate the math of contract-based loss theories that still may obtain.

### b. Blackjewel's Motion to Exclude Cantrell Report

Blackjewel moves to exclude the final opinion of Defendants' expert witness Brian Cantrell, which provides, "[a]fter INMET defaulted, Defendants acted in accord with their rights under the Loan and Marketing Agreements to protect their interests, the same way any secured lender would." *See* DE 48 at 1; DE 48-3 at 12. Blackjewel argues this opinion must be excluded because (1) it is an improper affirmative opinion, (2) it offers an improper legal conclusion, or (3) its probative value is substantially outweighed by the danger of unfair prejudice to Blackjewel. *See id.*

Blackjewel first argues that the final opinion should be excluded because it is not a rebuttal opinion, arguing it is instead an affirmative opinion and out of scheduling order compliance. Federal Rule of Civil Procedure 26(a)(2)(D), as a default, permits a party to disclose expert rebuttal evidence, or "evidence intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)," within 30 days after the other party's disclosure. FED. R. CIV. P. 26(a)(2)(D)(ii). Rebuttal expert opinions are limited in scope: they may only respond to the original expert's opinions and may not advance new arguments. *See E.E.O.C. v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1047 (E.D. Tenn. 2015); *Bentley v. Highlands Hosp. Corp.*, No. 15-97-ART-EBA, 2016 WL 5867496, at *5 (E.D. Ky. Oct. 6, 2016).

Blackjewel argues that Cantrell's final opinion exceeds the scope of Ms. Barickman's opinions, making it an affirmative (non-rebuttal) opinion. *See* DE 48-1 at 4-5. Defendants respond in two ways. First, they argue the opinion does not exceed the scope, making it a proper rebuttal

11

opinion. *See* DE 54 at 4. Second, they explain that even if the Court accepts Blackjewel's argument and considers the opinion an affirmative opinion, it is admissible as a timely disclosed expert opinion. *See id.* at 3. Ms. Barickman's sixth opinion, which the Court previously found admissible, provides that INMET's and Defendants' *arrangement* was inconsistent with market norms. *See* DE 48-4 at 15 (emphasis added). Mr. Cantrell's opinion does not speak to the regularity or oddity of the arrangement itself (unlike his penultimate opinion, not at issue), instead commenting only on what a reasonable lender would do upon default to protect its interests. *See* DE 48-3 at 12. The last opinion is distinct and not rebuttal. The question the Court must now answer is whether an affirmative opinion, styled as a rebuttal opinion, can yet be allowed if compliant with the basic opinion-disclosure deadline.

*Bentley* speaks directly to this issue. "What happens if a party's supplemental or rebuttal disclosure is, in truth, neither supplemental nor rebuttal? Well, substance triumphs over form: The Court will look past the party's label and construe the report as an initial disclosure of an affirmative expert opinion under Rule 26(a)(2)(A)–(C)." *Bentley*, 2016 WL 5867496, at *5. This certainly squares with the Rule itself and the Court's scheduling order. Thus, under this framework, Mr. Cantrell's final opinion is a timely filed affirmative opinion. Blackjewel grasps at straws to avoid this outcome, contradicting itself by first stating the opinion was an affirmative opinion, *see* DE 48-1 at 4 ("It is, instead, an affirmative opinion that exceeds the scope of rebuttal testimony."), only to later argue that the Court "should decline Defendants' invitation to change Mr. Cantrell's final opinion from a rebuttal opinion to an affirmative opinion." *See* DE 58 at 2. Blackjewel's argument that Defendants "must live with their choice" of designating Mr. Cantrell's opinion as rebuttal simply does not reflect the law applied in *Bentley* on this issue or the text of Rule 26.

Blackjewel alternatively moves to exclude Mr. Cantrell's final opinion as an improper legal conclusion. *See* DE 48-1 at 5. However, this argument diverges into two theories, each faltering: Blackjewel first seems to argue that the opinion itself is an improper legal conclusion that does nothing more than instruct the jury on what result to reach. *See id.* But in the next paragraph, Blackjewel appears to argue that the opinion is an improper legal opinion given by a non-lawyer, perhaps a qualification argument. *See id.* Neither argument carries the day.

"An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However, "testimony offering nothing more than a legal conclusion—i.e., testimony that does little more than tell the jury what result to reach—is properly excludable under the Rules." *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997). "[T]here is a 'subtle,' but 'nonetheless important' distinction between 'opin[ing] on the ultimate question of liability' (impermissible), and 'stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue' (permissible)." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994)). "Thus, we have generally excluded expert testimony for stating a 'legal conclusion' *only* when the witness explicitly testifies, in 'specialized' legal terminology, that a defendant violated (or did not violate) the law." *Id.* (collecting cases) (emphasis in original).

Mr. Cantrell's final opinion is not an impermissible legal opinion. In it, he does not purport to opine about specialized terminology or on what result the jury should reach. Instead, the opinion properly provides support for Defendants' position on an element of Blackjewel's tortious interference claim: privilege/justification. Mr. Cantrell is also qualified to give this opinion under the guiding Rule 702 requirements. It is true that Mr. Cantrell is not an attorney. However,

13

throughout his four decades-long career, he has held several senior-level roles, such as CFO, President, and Vice President.  He served as both Vice President and Chief Financial Officer for Alliance Resource Partners, L.P., for 20 years before retiring in 2023.  *See* DE 48-3 at 3.  This degree and length of employment assuredly qualifies him to opine on remedial lending principles, not as a lawyer but as someone well-versed in deal and default dynamics.

That said, the Court notes that the disclosed opinion says little specific regarding the underlying documents.  As such, while Cantrell can generally describe Defendants as using contract-based rights, it would be up to Blackjewel, on cross, to review particulars if it so chooses.  Cantrell may not go beyond what he disclosed.  Generally, though, testimony about creditors and their remedial ardor (on contractually comparable and typical terms) is appropriate as a comparative point, as is Cantrell's observations about Defendants' self-protective posture in the workings of INMET, given the entity's financial straits and Defendants' investments.

Blackjewel lastly moves for exclusion of Mr. Cantrell's final opinion on Rule 403 grounds, arguing that the probative value of the opinion is substantially outweighed by the danger of unfair prejudice because such opinion, which would be given great weight by the jury due to Mr. Cantrell's expert status, "would effectively exonerate Defendants from any wrongdoing."  *See* DE 48-1 at 6.  The Court disagrees with the characterization.  The jury will know that all law comes only from the Court.  Further, the posture, that the proof from a witness will hurt, simply does not satisfy Rule 403's "high bar" for exclusion.  *See United States v. Guzman*, 571 F. App'x 356, 361 (6th Cir. 2014).  Mr. Cantrell does not "testify that all of Defendants' actions were proper under the relevant agreements" as Blackjewel suggests.  *See* DE 58 at 7.  His opinion is that Defendants acted in accordance with their rights following INMET's default, consistent with the typical

14

secured lender.  *See* DE 48-3 at 13.  The Court sees no danger of unfair prejudice here, and certainly not the type of imbalance that would yield Rule 403 relief pre-trial.

### IV.    Conclusion

For the reasons outlined above, the Court **GRANTS in part** DE 49, excluding Opinions 1, 2, 3 and 5 of Ms. Barickman's report (but not Opinions 4 and 6).  Further, the Court **DENIES** DE 48 on the stated terms.

This the 31st day of March, 2026.

Signed By:

*Robert E. Wier*

**United States District Judge**

15